840 A.2d 822

LUIGI MONACO AND FRANCESCA MONACO, HIS WIFE, PLAIN-TIFFS–APPELLANTS AND CROSS–RESPONDENTS, v. HARTZ MOUNTAIN CORPORATION, DEFENDANT–RESPONDENT, AND ABC CORP., DEF CORP. AND GHI CORP., (FICTITIOUS DESIGNATIONS INTENDED TO DESIGNATE UNKNOWN ENTITIES RESPONSIBLE FOR PROPER INSTALLATION, MAINTENANCE AND REPAIR OF A CERTAIN SIGN AND/OR SIGNPOST), DEFENDANTS, AND CITY OF NEWARK, DEFENDANT AND CROSS–APPELLANT.

Argued October 20, 2003—Decided February 9, 2004.

402

*Alan D. Bell* argued the cause for appellants/cross-respondents.

*Jack T. Spinella* argued the cause for respondent (*Weiner Lesniak*, attorneys; *Mr. Spinella* and *Therese M. Brady*, on the brief).

*LaShawn Y. Williams*, Assistant Corporation Counsel, argued the cause for cross appellant (*JoAnne Y. Watson*, Corporation Counsel, attorney).

Justice LONG delivered the opinion of the Court.

The primary issue in this appeal centers on the liability of a commercial landowner in a case in which a traffic sign, situated on its sidewalk, became dislodged and caused injury to the landowner's invitee. The trial court and the Appellate Division held that the commercial landowner had no "legal" duty with respect to the sign that was owned and installed by the City of Newark over which the landowner had no control. We hold that those decisions, based solely on ownership and control, too narrowly conceived the obligations of a commercial landowner. Applying well-settled principles, we are satisfied that a landowner owes a duty to its invitees to maintain its land in a safe condition, to inspect, and to warn of hidden defects whether within its power to correct or not, and that it was for the jury to determine whether a breach of that duty occurred.

I

The case arose as follows: on April 18, 1996, plaintiff Luigi Monaco was employed by the Newark Board of Education, a tenant in a building at 2 Cedar Street in Newark, New Jersey, owned by defendant Hartz Mountain Corp. As Monaco exited the building, a gust of wind dislodged a nearby municipal parking sign ("Permit Parking Only") installed on Hartz's sidewalk. The sign

became airborne and injured Monaco and Frager Berry, another Board employee who was exiting behind him.

Monaco and Berry (collectively, plaintiffs) filed a civil complaint against Hartz and the City for damages arising from their injuries. Both Defendants moved for summary judgment, Hartz arguing that it had no legal duty with respect to the sign and both Hartz and Newark contending that they had no notice of a dangerous condition.

## A. Pretrial Motions

The report of engineering expert Theodore Moss, based on the deposition testimony of the parties and witnesses, an inspection of the accident scene, City records and relevant building and signage codes [1] was presented in support of plaintiffs' motion. Moss concluded that 2 Cedar Street is a virtual "wind tunnel," surrounded by loading docks and heavily trafficked by large trucks that had in the past knocked down nearby signs while maneuvering into and out of the docks. According to Moss, City records revealed that repairs to traffic signs on Cedar Street had been performed by the City, thus placing the City on notice that signs on Cedar Street were subject to damage and required regular inspection.

Moss's report further stated:

Street signs like the one in question are, or course, embedded into the concrete sidewalk and cannot be dislodged by the wind or fall over under normal circumstances. Such movement/failure directly and absolutely indicates that the sign/sign post had been previously damaged. In this case, available information indicates that the sign/sign post had been damaged by a vehicle and dislodged. Thereafter, the sign remained in a damaged/loosened condition for an extended period of time. Mr. Berry worked as a truck driver for the Newark Board of Education and indicates in his deposition that he regularly visited this area. He testifies that the sign and post had been bent and leaning and that the sign/sign post was "wiggling" very noticeably in the wind. He indicates that he and other truck drivers had

---

[1] Moss' expert opinion included reference to the BOCA National Building Code, the BOCA National Property Maintenance Code, the New Jersey Administrative Code, the New Jersey State Housing Code, and the Manual On Uniform Traffic Control Devices For Streets And Highways.

noted and commented on the sign condition and the ongoing looseness for more than a month before this accident occurred.

In addition, Moss observed that:

The property manager for Hartz, Mr. Philip LaPlaca, maintains his office in the building and confirms that Hartz is responsible for maintenance of all common areas of the building, including the exterior sidewalk and premises. In fact, the sidewalk in question and adjoining driveway/truck bay curb cut were installed by Hartz as part of a 1990 building renovation. Mr. LaPlaca further acknowledges that Hartz is responsible for the safety of people who enter and leave the building. Initially he tells us that, in keeping with these responsibilities, he personally inspects the area at least two or three times a week and indicates that this inspection includes sidewalks and signs. We are further told that the area is inspected daily by porters/maintenance personnel working for a cleaning and maintenance contractor employed by Hartz.

[ (citations omitted).]

Moss opined that a minimally competent inspection would have revealed the defect in the sign that injured plaintiffs. He concluded that wind could not have been the sole cause of the accident; rather, he stated that there must have been structural damage to the sign, eventually leading to a loose base, and finally, to the accident itself. Moss read the pertinent building and signage codes to devolve responsibility for inspection and maintenance of the sidewalk and sign on both Hartz and the City.

Robert Moore, the Chief of Operations, Traffic and Signals Division of Transportation for the City of Newark, submitted a certification fully acknowledging responsibility for overseeing the repair, maintenance, and proper operation of traffic signs and signals in the City. He conceded that another sign on Cedar Street had been damaged and repaired in 1995, but stated that there was no record of damage to the sign that injured plaintiffs. Thus, he concluded that the City was not on notice of the damaged condition of the sign on the day in question.

The City also cited to relevant Newark ordinances, that state:

Any person owning, leasing or occupying any house or other building, or vacant lot, fronting on any street in the city shall, at his or their charge and expense, well and sufficiently pave and maintain in good repair, in accordance with this title and the regulations of the director, the sidewalk, including the authorized installations thereon and therein, and the curb of the street in front of such house, building or lot.

. . .

Upon failure of any owner, lessee or occupant to construct or maintain the sidewalk and curb as provided for in section 22:3–1 of this chapter, the director or his authorized representative shall serve, according to law, a notice, upon such owner, lessee or occupant describing the property affected and the improvement or repairs required, and stating the intention of the city to cause such improvement or repairs to be made within 30 days after service of notice in the event that such owner, lessee or occupant shall fail to do so.

. . .

If, after service of any notice as provided for in section 22:3–2 of this chapter, the owner, lessee or occupant of any lands affected thereby shall neglect to make improvement directed by such notice, the director shall cause such improvement to be made and shall certify the cost of the same to the director of finance, who shall impose, collect and enforce such sidewalk assessment as is provided for by law.
[Newark, NJ., Rev. Ordinance 22:3–1 to –3 (1951) ]

The City construed that ordinance to devolve upon Hartz the primary responsibility for inspection and maintenance of the sidewalk and sign, presumably with secondary responsibility remaining with the City.

The deposition testimony of Bahman Izadmehr, Manager of the Division of Traffic and Signals of Newark, acknowledged that under the State Uniform Traffic Manual, the City is required to maintain an inspection schedule for traffic signs. According to Izadmehr, the City alone has the responsibility for maintaining and repairing traffic signs because it "owns" the signs. He indicated, however, that due to limited funds, the City only has an inspection procedure for stop signs. Other traffic signs are not regularly inspected; instead, the City relies on reports from property owners of any observed dangerous condition. City records revealed that other signs on Cedar Street had been repaired and, according to Izadmehr, it is the City's practice, when a repair crew responds to a complaint regarding one sign, to inspect other signs in the area.

According to the City, during the ten days prior to the accident, the sign was able to withstand several thunderstorms and winds with peak gusts of 44, 37, 36, and 30 miles per hour, whereas the maximum peak gust on April 18 was only 20 miles per hour.

Thus, the City contended that any defective condition must have occurred spontaneously and that it could not be charged with constructive notice thereof.

The court granted the City's motion, essentially concluding, on the facts presented, that a jury could not find that the City had constructive notice of the damaged sign. However, the court denied Hartz's motion for summary judgment:

> Here, a genuine material fact exists to deny the Hartz Mountain motion—Mr. Monaco is an invitee of Hartz Mountain, and under the current case law Hartz owed him a duty to maintain [its] land in a reasonably safe condition, and maintain the sign posted, and either repair or give notice of any defective condition. I don't think there's any dispute but that Monaco was an invitee.

In response to Hartz's counsel's interjection that it did not have the right to repair the sign, the court went on:

> I'm not saying they did. They have a right to either notify the City of Newark to have it repaired, or give warning to people who might be harmed by the defect that either they actually knew about orally, or should have known about it by the inspection that they admit they did. The facts here, and are incorporated by the way by reference [to] the colloquy with counsel. Hartz knew about Moss and the Board of Education. The adjacent sidewalk is obvious, and definitely a route which invitees would travel. *Warrington v. Bird*, 204 *N.J.Super.* 611, 499 *A.*2d 1026 (App.Div.1985), provides that expectation of [the] invitee and safe passage would be afforded over an area. Makes the—in that area the responsibility, again, of the landlord to do the repair, or warn of—warning is perfectly fine. It's not an issue of—I understand—the City of Newark['s] sign, [Hartz] may not have had an ability to repair, but could have warned about it.

The court continued:

> And with respect to the issue of notice, it's clear to me that Hartz admitted to inspecting the sidewalk two or three times a week, and that Mr. Moss indicated [a] most minimal inspection would have disclosed the defect. Whether or not that opinion of Mr. Moss ends up surviving cross-examination, and whether or not it's believable by a jury, is a whole other issue. But remember this is summary judgment. And with an existing inspection, with the expert saying that the most minimally competent inspection would disclose the defect, I'm satisfied that there's a factual issue[,] if that's the case, that would warrant submission to the jury.

## B. The Trial Against Hartz

The case against Hartz went to trial. Monaco testified that on April 18, 1996, he was employed by the Newark Board of Education at 2 Cedar Street in Newark, New Jersey, and that "18–

Wheeled" delivery trucks, which used the area's loading docks to deliver various types of material, frequently traversed the street. He stated that on that same date, he exited the building around noontime to get some "fresh air," noting that it was "extremely windy." He left the building through two sets of doors—the first led to a small foyer and the second, outside. As he went through the first set of doors, Monaco saw two friends, Lou Maccarone and Jude Luongo. He held the second door open for Frager Berry, who was leaving the building behind him. Monaco testified that the next thing he remembered was seeing a "flash or a blur" as he was knocked back. He was hit by a parking sign and its attached pole, which struck him on the right side of the head, causing him to fall and hit his head on the exit doors. Monaco testified that the parking sign was located approximately eight feet from the front entrance of the building before becoming airborne.

Jude Luongo, an employee of the Newark Board of Education, testified that five to ten minutes before the accident occurred, he was standing next to the sign smoking a cigarette and talking with Maccarone. Luongo witnessed Monaco and others exit the building just as a gust of wind blew through the area, he saw the sign pole dislodge from its cement foundation, become airborne, and strike Monaco, knocking him unconscious as a result of the blow. Luongo recalled that he had seen cars and trucks hit the sign three or four times in the three years before the plaintiffs were injured and that for a couple of months prior to the accident, the sign was "crooked" and that it was "fixed" on a couple of occasions only to become crooked again. Notably, Luongo testified that he observed that the sidewalk directly beneath the sign was cracked prior to the accident.

Berry also testified at trial, stating that he went to 2 Cedar Street several times a week prior to the accident to make deliveries or to pick up materials. Berry said that approximately one to two months before the incident, he noticed that both the sign and its pole would squeak and move when the wind blew, but that he had not observed the sign on the day of the accident.

Moss gave expert testimony on behalf of plaintiffs that tracked his report. He stated that the sign and its pole had been bent by impact; that there was damage to the base of the sign where it was embedded in the concrete; and that the pole was bent, causing looseness between it and the concrete. Moss asserted that the sign's loosened connection at its base, coupled with the windy conditions of the area that day, caused the sign to dislodge from its concrete foundation, become airborne, and strike plaintiffs as they exited the building. He concluded that both the City and Hartz were responsible for the sidewalk and the sign, and that even a minimally competent inspection would have revealed the defect that led to the plaintiffs' injuries.[2]

Portions of the deposition of Philip LaPlaca, Hartz's property manager at 2 Cedar Street, were read into the record at trial. LaPlaca acknowledged that Hartz installed the sidewalk and was responsible for its maintenance. He stated that he inspected the area surrounding 2 Cedar Street two or three times a week, "including sidewalks and signs in front of 2 Cedar Street extending all the way down the block of Cedar Street." However, he denied inspecting the sign that is at issue in this case.

At the close of plaintiffs' case, Hartz moved for a directed verdict pursuant to *Rule* 4:37–2(b), arguing that it had a duty only with regard to the sidewalk, but no duty with regard to a sign that was owned, maintained, installed, and repaired by the City. Hartz further asserted that, if the trial court found that it did have a duty, it did not have notice that the sign was defective. In response to Hartz's contention that it had no duty to inspect or maintain the sign, plaintiffs argued that, as a commercial landown-

---

[2] During the plaintiffs' direct examination of Moss, the trial court barred testimony regarding the Newark ordinance. The court ruled that the sign was a structure that by law was installed by the governing body, and that the ordinance therefore was relevant to the City of Newark only and not to Hartz. A facial reading of the ordinance reveals the error of that ruling. The ordinance made Hartz responsible for the maintenance of the concrete sidewalk, which was the footing for the sign and "for installations thereon."

er, Hartz owed traditional duties of inspection and warning to its invitees and that, in any event, it voluntarily assumed that duty through LaPlaca.

The trial court granted Hartz's motion for directed verdict, concluding that:

The real question is whether Hartz Mountain, as the landowner, has any legal duty with respect to a traffic sign which, in this case, the City of Newark installed on the sidewalk of its premises and which the city essentially has whatever obligation there is to maintain. I find nothing in any of the deposition transcript read of Mr. LaPlaca of Hartz Mountain that Hartz actually assumed the inspection responsibilities which, I think, very clearly rested with the City of Newark with respect to the sign in question, and there's nothing to indicate that the City of Newark in any way delegated its inspection response—and maintenance responsibilities to Hartz Mountain. This Court knows of no case in New Jersey which imposes upon a landowner any duty with respect to inspecting or notifying somebody else about any problems with a structure which that landowner does not own or maintain. Certainly such a—a sign such as this is not something within the landowner's control.

Monaco appealed from the grant of the City's motion for summary judgment and from the grant of Hartz's motion for a directed verdict. Hartz did not challenge the denial of its motion for summary judgment.[3]

The Appellate Division affirmed the trial court's grant of a directed verdict in favor of Hartz. In doing so, it ruled that Hartz had no legal duty with respect to a traffic sign owned and installed by the municipality. However, the court reversed the grant of summary judgment entered in favor of the City based on what it viewed as a genuine issue of material fact regarding constructive notice, outlining facts from which such notice could be inferred. The court stated:

In this case, the City did not have actual notice, but there was in our view a genuine issue of material fact as to whether it had constructive notice. The pertinent circumstances from which an inference of constructive notice could reasonably arise include evidence that concrete around the base of the sign's support post was cracked, that the signpost had been bent over in the past by trucks or other vehicles, and that bending of the post had been noticeable. It

---

[3] Berry, who appeared *pro se* at trial, apparently chose not to appeal.

appears undisputed that the damage to the base of the post had existed for more than a month.

We conclude, then, that whether the City had constructive notice pursuant to *N.J.S.A.* 59:4–3(b) is a question for the trier of fact in all the circumstances here presented and that the granting of summary judgment was error under the standards affirmed in *Brill v. Guardian Life Ins. Co. of. Am.,* 142 *N.J.* 520, 540, 666 *A.*2d 146 (1995).

Monaco petitioned for certification from the affirmance of the grant of the directed verdict in favor of Hartz. The City filed a cross-petition challenging the reversal of the trial court's grant of summary judgment in its favor. We granted both petitions. 175 *N.J.* 433, 815 *A.*2d 479 (2003).

## II.

Monaco argues that, in ruling that Hartz had no legal duty to its invitees, the Appellate Division violated our decision in *Hopkins v. Fox & Lazo Realtors,* 132 *N.J.* 426, 625 *A.*2d 1110 (1993), which looked beyond control to the foreseeability of the risk, the relationship of the parties, the defendant's ability to mitigate damages, and the public policy interest in the solution. In any event, Monaco contends that Hartz assumed such a duty through LaPlaca. Hartz counters that it had no legal duty to maintain, inspect, or repair the sign, and that even if it had such a duty, it had no notice of the dangerous condition.

In its petition, the City of Newark argues that the Appellate Division erroneously considered Luongo's testimony regarding the broken concrete that was adduced long after the summary judgment motion was decided. Monaco counters that at worst, the error is harmless because neither party was aware that Luongo was a fact witness until three months after the City's motion was heard and thus a motion for reconsideration could have been granted on that basis.

## III

We turn first to plaintiffs' claims against Hartz.

## A.

■ As a preliminary matter, we note that the trial court overstepped its bounds when it ruled that Hartz had "no legal duty" with respect to a sign it did not own. That issue was resolved in Monaco's favor on Hartz's motion for summary judgment. In fact, the motion judge ruled that, as a commercial landowner, Hartz *had* a duty toward its invitees, including Monaco, to maintain a safe premises, including areas of ingress and egress and to inspect and give warning of a dangerous condition. A court of equal jurisdiction had no right to "reconsider" in the absence of substantially different evidence at a subsequent trial, new controlling authority, or specific findings regarding why the judgment was clearly erroneous. *Underwood v. Atlantic City Racing Ass'n,* 295 *N.J.Super.* 335, 340, 685 *A.*2d 40 (App.Div.), *certif. denied,* 149 *N.J.* 140, 693 *A.*2d 110 (1996). None of those conditions was satisfied here.

## B.

■ A motion for directed verdict under *Rule* 4:37–2(b) is governed by the following standard:

[I]f, accepting as true all the evidence which supports the position of the party defending against the motion and according him the benefit of all inferences which can reasonably and legitimately be deduced therefrom reasonable minds could differ, the motion must be denied....

[*Estate of Roach v. TRW, Inc.,* 164 *N.J.* 598, 612, 754 *A.*2d 544 (2000)(quoting *Sons of Thunder, Inc. v. Borden, Inc.,* 148 *N.J.* 396, 415, 690 *A.*2d 575 (1997) (quoting *Dolson v. Anastasia,* 55 *N.J.* 2, 5–6, 258 *A.*2d 706 (1969) (citations and quotations omitted in original)).]

Thus, the facts in this case must be viewed from that vantage point. So viewed, they are as follows: Hartz Mountain is a commercial landowner that earns income by renting its premises to the Newark Board of Education. Monaco is an employee of the Board and thus an invitee of Hartz. Monaco was injured on Hartz's own property, which is located on a street that is a virtual wind tunnel. That injury occurred on a windy day when a sign installed and maintained by the City flew out of a sidewalk

installed and maintained by Hartz and struck Monaco. That sign, which limited parking to permit holders, was installed to advance the interests of Hartz and its tenants. Under the relevant Newark Municipal ordinance, the sidewalk was the responsibility of Hartz. *See also, Stewart v. 104 Wallace Street, Inc.*, 87 *N.J.* 146, 432 *A.*2d 881 (1981) (commercial landowners are responsible for maintaining abutting sidewalks). Prior to the accident, the sidewalk directly beneath the sign was cracked. In the months prior to the accident, witnesses noticed that the sign was "crooked," "would squeak and move when the wind blew" and was "bent" and "wiggling." LaPlaca, the property manager of Hartz, acknowledged that Hartz installed the sidewalk and is responsible for its maintenance. He further stated that he personally inspected the area around the scene of the accident two or three times per week "including sidewalks and signs in front of 2 Cedar Street extending all the way down the block of Cedar Street."

Moss, the plaintiffs' expert, testified that a minimally competent inspection of the area would have revealed the condition at the base of the sign. He also stated that the damage to the sign was foreseeable based on past history of damage resulting from the sign being struck by large trucks and due to the windy conditions on Cedar Street. According to Moss, Hartz may not have had the right to repair the sign, but it had a duty under accepted building and traffic standards, at least to inspect the sign and to notify the City of defects in it.

## C.

The legal principles governing a commercial landlord's liability are relatively straightforward. Such a landowner must exercise reasonable care for an invitee's safety. That includes making reasonable inspections of its property and taking such steps as are necessary to correct or give warning of hazardous conditions or defects actually known to the landowner. *Hopkins, supra,* 132 *N.J.* at 434, 625 *A.*2d 1110. The landowner is liable to

an invitee for failing to correct or warn of defects that, by the exercise of reasonable care, should have been discovered. *Ibid.*

Moreover, in a long line of cases, our courts have extended a commercial landowner's duty, when warranted by the facts, to cases in which the landowner had no control over the dangerous condition and the condition was not located on its property. In *Warrington v. Bird*, 204 *N.J.Super.* 611, 499 *A.*2d 1026 (App.Div.), *certif. denied*, 103 *N.J.* 473, 511 *A.*2d 653 (1986), plaintiff sued a restaurant for injuries he sustained while crossing the street from the defendant's parking lot to its premises. The Appellate Division properly concluded that the critical point was not whether the proprietor had control over the public street, but the invitee's expectations:

> We agree that the critical element should not be the question of the proprietor's control over the area to be traversed but rather the expectation of the invitee that safe passage will be afforded from the parking facility to the establishment to which they are invited. Commercial entrepreneurs know in providing the parking facility that their customers will travel a definite route to reach their premises. *The benefiting proprietor should not be permitted to cause or ignore an unsafe condition in that route which it might reasonably remedy, whether the path leads along a sidewalk or across a roadway.*
>
> [*Id.* at 617, 499 *A.*2d 1026 (emphasis added).]

Thus, the Appellate Division held that although the defendant could not change the county road, it could have placed better lighting, a sign, or flashing signal to warn its patrons, who could reasonably expect a safe method of ingress to the restaurant, of the danger. *Ibid.; see also, Zepf v. Hilton Hotel & Casino*, 346 *N.J.Super.* 6, 16, 786 *A.*2d 154 (App.Div.2001) (finding casino had duty towards employee regarding criminal activity on "perimeter" of property); *Mulraney v. Auletto's Catering, Nat. Valet Parking, Inc.*, 293 *N.J.Super.* 315, 680 *A.*2d 793, (App.Div.) (imposing duty upon caterer when plaintiff was struck by car while crossing unlit county road from defendant's property to parking lot across street), *certif. denied*, 147 *N.J.* 263, 686 A.2d 764 (1996); *Jackson v. K–Mart Corp.*, 182 *N.J.Super.* 645, 442 *A.*2d 1087 (Law Div. 1981) (holding defendant had duty to patrons regarding ingress

and egress from parking lot to store even though defendant had no control over public sidewalk).

Nothing in our decision in *Kuzmicz v. Ivy Hill Park Apts., Inc.,* 147 *N.J.* 510, 688 *A.*2d 1018 (1997), supports Hartz's contrary contention. There, we held that a landlord had no duty toward a tenant who was assaulted on adjacent municipal property. *Id.* at 523, 688 *A.*2d 1018. Our ruling was not based on mere ownership but on the fact that the landlord received no economic benefit from the lot and provided a safe alternative means of ingress and egress to the tenants. *Id.* at 520–22, 688 *A.*2d 1018. In other words, we found no duty as a matter of fact—not as a matter of law.

Likewise, *Sims v. City of Newark,* 244 *N.J.Super.* 32, 581 *A.*2d 524 (Law Div.1990), relied on by Hartz, is equally unsupportive of its position. In *Sims,* a landowner was held to have no duty toward an injured plaintiff regarding a shade tree located outside the boundary of its property. *Id.* at 48, 581 *A.*2d 524. The fulcrum of the opinion was a municipal shade tree ordinance that explicitly forbade the landowner from pruning or cutting down a tree without written permission from the municipality. *Id.* at 47, 581 *A.*2d 524.

However, decisions subsequent to *Sims* overwhelmingly reveal it as an anomaly against the well-settled tradition of recognizing that a landlord may not sit idly by a hazardous condition affecting its property, regardless of control, when that condition places a third party in danger. For example, in commenting on *Tierney v. Gilde,* 235 *N.J.Super.* 61, 561 *A.*2d 638 (App.Div.), *certif. denied,* 117 *N.J.* 666, 569 *A.*2d 1357 (1989), a decision also restricting commercial landowner liability in the shade tree commission context, the Appellate Division in *Learn v. City of Perth Amboy,* 245 *N.J.Super.* 577, 584, 586 *A.*2d 327 (App.Div.1991), expressed concern over the scope of that holding, stating;

> [E]ven if we were to follow *Tierney,* we would nevertheless take the view that if a shade tree commission's consent were required in order for an abutting commercial landowner to repair a sidewalk made dangerous by a tree root, the landowner would still be obliged to seek that consent if he had notice of the defective condition

so caused. Certainly, no immunity could attach if he had that knowledge and made no effort, consistent with municipal allocation of responsibility, to effect a repair.

> [*Learn, supra,* 245 *N.J.Super.* at 584, 586 *A.*2d 327; *see also, Straus v. Borough of Chatham,* 316 *N.J.Super.* 26, 31–32, 719 *A.*2d 664 (App.Div.1998) (abutting landowner is required to seek consent of Shade Tree Commission to repair sidewalk if it is on notice of defective condition).]

More recently, in *Nielsen v. Lee,* 355 *N.J.Super.* 373, 810 *A.*2d 600 (App.Div.2002), *certif. denied,* 176 *N.J.* 73, 819 *A.*2d 1188 (2003), Judge Pressler observed:

> [W]e think it plain that the language of *Tierney* was overbroad and that the judicial trend has been, to the contrary, the continued recognition of the *Stewart* liability rule, namely, the imposition of some degree of duty, and hence potential liability, on the abutting commercial landowner within the context of the shade tree statute and ordinance. This is so even if that duty is limited to require the seeking [of] a permit to make the repair or, on an even more limited basis, simply notifying the shade tree commission of the dangerous condition and requesting it to provide the corrective action.
>
> [*Id.* at 378, 810 *A.*2d 600; *see also; N.J.S.A.* 59:4–10(b)(statutorily creating liability and preempting *Straus, supra* ).]

In short, our traditional jurisprudence clearly recognizes that neither ownership nor control is the sole determinant of commercial landlord liability when obvious danger to an invitee is implicated.

■ Recently, in *Hopkins v. Fox & Lazo, supra,* in addressing whether a real estate broker owes a duty of care to potential buyers who are shown a home on an open house tour, we turned a new lens on the question of the applicability of the common law doctrine of premises liability. Although the setting was different from the one before us, the principles resonate here:

> The inquiry should be not what common law classification or amalgam of classifications most closely characterizes the relationship of the parties, but, as exemplified by our decision in *Butler* [*v. Acme Markets, Inc.,* 89 *N.J.* 270, 445 *A.*2d 1141 (1982)* ], whether in light of the actual relationship between the parties under all of the surrounding circumstances the imposition on the broker of a general duty to exercise reasonable care in preventing foreseeable harm to its open-house customers is fair and just. That approach is itself rooted in the philosophy of the common law. *See Palsgraf v. Long Island R.R. Co.,* 248 *N.Y.* 339, 162 *N.E.* 99 (1928); *Heaven v. Pender,* 11 Q.B.D. 503, 509 (C.A.1883) (Brett, M.R.).
>
> [132 *N.J.* at 438, 625 *A.*2d 1110.]

We went on to observe that "whether a person owes a duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." *Hopkins, supra*, 132 *N.J.* at 439, 625 *A.*2d 1110 (citing *Goldberg v. Hous. Auth. of City of Newark*, 38 *N.J.* 578, 583, 186 *A.*2d 291 (1962)). That inquiry involves "identifying, weighing and balancing several factors [including] the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." *Hopkins, supra*, 132 *N.J.* at 439, 625 *A.*2d 1110. That is the backdrop for our inquiry.

### D.

Whether we apply the classic commercial landowner liability standard as urged by Hartz or the more fluid *Hopkins* rule as urged by Monaco, is inconsequential. Either way, a reversal is in order. Based on the traditional standard of commercial landlord liability, Hartz had a duty to exercise reasonable care for Monaco's safety, including making reasonable inspections of its own property and the abutting sidewalk and taking such steps as were necessary to correct or give warning of a hazardous condition thereon. *Handleman v. Cox*, 39 *N.J.* 95, 111, 187 *A.*2d 708 (1963). That duty existed whether the defective condition that placed Hartz's invitees at risk was or was not within its power to control. The trial court's expressed idea that Hartz was absolved of its duty to inspect and warn because the City owned and presumptively maintained the sign simply has no basis in our jurisprudence. Hartz had the same duty as any commercial landlord—to inspect its premises and sidewalks and to take steps to protect its invitees from the dangers the inspection revealed. It was for the jury to determine whether that duty was breached.

The same result flows from the application of the *Hopkins* standard. The relationship between Hartz and the Board of Education of which Monaco was an employee was forged solely to

advance Hartz's commercial interests. Monaco was an invitee of Hartz. The injury that was likely to result from the defective street sign, which was installed to advance the interests of Hartz's tenants, was a potentially serious one. Hartz had the ability to, and indeed did, regularly inspect its premises and the sidewalk it had installed. Very little additionally was required of it: repair the sidewalk, give notice to the City of the damage to the sign, or take some other action to warn or otherwise protect invitees from danger. The fairness and justice of recognizing a duty in such circumstances are clear beyond cavil. Thus, whether analyzed under traditional principles or under *Hopkins*, the trial court's notion that Hartz bore no legal duty to Monaco was wide of the mark.

What is important in all of this is that Monaco is not attempting to hold Hartz responsible for something over which it had no control, but only for negligently failing to take such measures as were within its power and duty to protect its invitees from reasonably foreseeable danger. Given the nature of the cause of action, both lower courts were mistaken in concluding that because Hartz did not own the sign, it had no duty with respect to it. On the contrary, Hartz owed a legal duty to Monaco and it was for the jury to determine whether that duty was satisfied.

■   Hartz argues alternatively that even if a duty is found, it was entitled to judgment on the issue of notice. We disagree. On the facts presented, including LaPlaca's inspections and the obviousness of the problems involving the sign and the sidewalk to which other witnesses attested, the issue of notice is plainly one for the jury. We thus reverse the judgment of the Appellate Division that affirmed the directed verdict in favor of Hartz.

## IV

■   We turn finally to the City's contention that the Appellate Division erred in reversing the grant of summary judgment in its favor. In support, the City argues that that court improperly relied on evidence that was not adduced until after the summary

judgment motion was granted. To be sure, the Appellate Division gilded the lily to some extent with after-acquired evidence. Nevertheless, from our independent review of the record and applying the summary judgment standard, we are satisfied that its ultimate conclusion was correct. The City acknowledged responsibility for the sign, and Monaco submitted enough evidence to require a trial on the question of whether the City knew or should have known of the dangerous condition. That evidence includes the prior repair on Cedar Street; the City's acknowledgement that when another repair is carried out, adjacent areas are inspected; and the defects in the sign that were obvious to witnesses. We therefore affirm the Appellate Division's disposition of the summary judgment motion with respect to the City.

Obviously, if at a trial, a jury finds that both the City and Hartz breached a duty to Monaco, it will be required to grapple with concepts of concurrent negligence along with issues of proximate cause under appropriate jury instructions.

## V.

The Appellate Division's reversal of the grant of summary judgment to the City of Newark is affirmed and its affirmance of the directed verdict in favor of Hartz is reversed. The matter is remanded to the trial court for further proceedings consistent with this opinion.

Justice VERNIERO, concurring.

I join the Court's disposition in respect of both the municipality and commercial landowner. I write briefly only to emphasize that I agree with the Court's legal conclusion concerning the landowner in view of the fact that the dislodged sign was on the landowner's property (i.e., the sidewalk that the landowner installed and maintained). At the heart of our law is the notion that a party's "duty of reasonable care toward another turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of

public policy." *Hopkins v. Fox & Lazo Realtors*, 132 *N.J.* 426, 439, 625 *A.*2d 1110 (1993). Fairness would require that in certain circumstances a commercial landowner should be free of legal responsibility, such as when a defective condition is far removed from that party's control. That is not this case based on the facts and circumstances set forth meticulously in the Court's opinion.

*For affirmance in part/reversal in part*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—7.

*Opposed*—None.