12 A.3d 232 (2011)
418 N.J. Super. 94
In re Denial of Regional Contribution Agreement Between GALLOWAY TOWNSHIP AND CITY OF BRIDGETON.
Nos. A-1252-08T1, A-1290-08T1.
Superior Court of New Jersey, Appellate Division.
Argued May 26, 2010.
Decided February 7, 2011.
*234 Michael J. Blee, Atlantic City, argued the cause for appellant Galloway Township (A-1252-08) and respondent Galloway Township (A-1290-08) (Mr. Blee, attorney, joins in the brief of appellant K. Hovnanian of Smithville, Inc. (Hovnanian)).
Thomas F. Carroll, III, Princeton, argued the cause for appellant Hovnanian (A-1290-08) and respondent Hovnanian (A-1252-08) (Hill Wallack, L.L.P., attorneys; Mr. Carroll, on the briefs).
Adam M. Gordon argued the cause for respondent Fair Share Housing Center (Mr. Gordon, attorney, joins in the brief of appellant Hovnanian).
George N. Cohen, Deputy Attorney General, argued the cause for respondent Council on Affordable Housing (Paula T. Dow, Attorney General, attorney; Lewis A. Scheindlin, Assistant Attorney General, of counsel; Mr. Cohen, on the brief).
Before Judges CUFF, C.L. MINIMAN and WAUGH.
The opinion of the court was delivered by
CUFF, P.J.A.D.
This appeal concerns a regional contribution agreement (RCA) between the Township of Galloway (Galloway) and the City of Bridgeton (Bridgeton). Galloway and K. Hovnanian at Smithville, Inc. (Hovnanian) appeal from a final decision of the Council on Affordable Housing (COAH) denying approval of the RCA. COAH determined that it lacked authority to approve the RCA due to an intervening statutory amendment prohibiting any approval of RCAs after July 17, 2008.
On appeal, Hovnanian argues COAH impermissibly refused to follow the mandate of this court, the 2008 amendment to the Fair Housing Act (FHA) did not apply to this RCA, and the amendment should be applied prospectively only. Hovnanian also argues that it and the participating municipalities will suffer a manifest injustice if the RCA is not considered on its merits by COAH. Galloway joins the arguments advanced by Hovnanian. COAH argues that the 2008 amendments to the FHA prevent it from approving RCAs. Respondent Fair Share Housing Center (FSHC) responds that COAH properly followed the plain language of the amendment and properly applied current law consistent with the time of decision rule, and contends no party will suffer a manifest injustice if the RCA is not implemented.
We affirm.
In order to appreciate the issues presented in this appeal, the appellate course of this matter must be reviewed. In our earlier opinion, In re Approval of Amended Second Round Plan, Regional Contribution Agreement, and Mediation Report of Galloway Township, No. A-1227-06, 2008 WL 2640125 (App.Div. July 7, 2008), we reviewed a final decision of COAH approving the RCA between Galloway and Bridgeton. As set forth in our *235 earlier opinion, on March 23, 2006, the Galloway Planning Board adopted an amendment to its certified plan which proposed to replace sixty-one affordable rental units in the Smithville Planned Unit Development (PUD)[1] with a sixty-one unit RCA in Bridgeton. Galloway proposed to pay Bridgeton $35,000 per unit, totaling $2.135 million for housing rehabilitation services in Bridgeton. Id. at 5. The Galloway governing body approved the certified plan amendment on March 28, 2006. Id. at 2.
This plan was subject to review and approval by the New Jersey Housing and Mortgage Finance Agency (HMFA), the Cumberland County Planning Board (Cumberland Board), and COAH. Id. at 2. Bridgeton also approved the plan and forwarded it and its own project to HMFA, the Cumberland Board, and COAH for review and approval. Id. at 7. After all requisite reviews and approvals, COAH adopted two resolutions on October 11, 2006: one approved the amended plan; the other determined that the RCA "is feasible and provides a realistic opportunity for the provision of low- and moderate-income housing." Id. at 2.
In our earlier opinion, we rejected several arguments presented by FSHC regarding the Galloway-Bridgeton RCA, including its contention that COAH regulations governing RCAs are facially invalid and have no ascertainable standards, id. at 13-22, and that the Galloway-Bridgeton RCA does not satisfy either FHA or COAH regulations, id. at 22-23. We held, however, that COAH
failed to articulate any specific findings of fact to support its conclusions and approvals. The agency merely relied on the conclusions of HMFA and the Cumberland Board, both of which simply reiterated the legal standards without articulating their own findings of fact. There is no indication in the report from COAH's staff or in the presentations during COAH's meeting that the agency relied on or even read the May 27, 2006 letter from Bridgeton's mayor, which set forth concrete facts that could have supported the approval of the RCA.
[Id. at 24.]
We also held that COAH "never explained its reasons for approving the $35,000 per unit transfer rate." Id. at 25. Finding "nothing for this court to review," we reversed the October 11, 2006 resolution approving the Galloway-Bridgeton RCA and remanded "for appropriate findings of fact." Ibid.
Our opinion was filed on July 7, 2008. On July 17, 2008, the Governor signed amendments to the FHA, some of which were effective immediately. As amended, the FHA provides:
No consideration shall be given to any [RCA] for which the council did not complete its review and grant approval prior to the effective date of P.L.2008, c. 46 (C.52:27D-329.1 et al.). On or after the effective date of P.L.2008, c. 46 (C.52:27D-329.1 et al.), no [RCA] shall be entered into by a municipality, or approved by the council or the court.
[N.J.S.A. 52:27D-312g.]
The effective date of this section was July 17, 2008.
On September 22, 2008, COAH acted on the remand directed by this court. It held that as a result of the recent amendments *236 to the FHA, specifically the amendment to N.J.S.A. 52:27D-312g, it no longer had the authority "to conduct fact finding in regards to the Galloway/Bridgeton RCA for any additional review and approval of the RCA," and thereby "denie[d] approval of the Galloway/Bridgeton RCA." It is from this Resolution that Galloway and Hovnanian appeal.[2]
COAH has a duty to obey the mandate of this court "`precisely as it is written.'" Special Care of N.J., Inc. v. Bd. of Review, 327 N.J.Super. 197, 204, 742 A.2d 1023 (App.Div.) (quoting Flanigan v. McFeely, 20 N.J. 414, 420, 120 A.2d 102 (1956)), certif. denied, 164 N.J. 190, 752 A.2d 1292 (2000). This court's remand instructions became the law of the case. Lowenstein v. Newark Bd. of Educ., 35 N.J. 94, 116-17, 171 A.2d 265 (1961). The law of the case rule is not inflexible, SMB Associates v. New Jersey Department of Environmental Protection, 264 N.J.Super. 38, 59-60, 624 A.2d 14 (App.Div.1993), aff'd, 137 N.J. 58, 644 A.2d 558 (1994), and does not apply when new law controls. Underwood v. Atl. City Racing Ass'n, 295 N.J.Super. 335, 340, 685 A.2d 40 (App.Div. 1996), certif. denied, 149 N.J. 140, 693 A.2d 110 (1997).
Prior to July 17, 2008, N.J.S.A. 52:27D-312 provided that a municipality with COAH's approval could contractually transfer up to fifty percent of its obligation to provide low- and moderate-income housing to another municipality within the same COAH housing region by means of an RCA. The RCA between Galloway and Bridgeton that COAH reviewed and approved in April 2006 was governed by N.J.S.A. 52:27D-312. We filed our opinion on July 7, 2008. Ten days later, the Governor signed the bill known during the legislative process as A-500. L. 2008, c. 46 made several amendments to the FHA.
In addition, L. 2008, c. 46, § 4 added a new section. Codified at N.J.S.A. 52:27D-302j, it provides:
The Legislature finds that the use of [RCAs], which permits municipalities to transfer a certain portion of their fair share housing obligation outside of the municipal borders, should no longer be utilized as a mechanism for the creation of affordable housing by the council.
Furthermore, another new section, codified at N.J.S.A. 52:27D-329.6, further explains the Legislature's purpose in prohibiting RCAs. First, it states that RCAs have "proven to not be a viable method of ensuring that an adequate supply and variety of housing choices are provided in municipalities experiencing growth." N.J.S.A. 52:27D-329.6a. Then it addresses the impact of eliminating RCAs as a device to further the provision of affordable housing. The Legislature stated:
Although the elimination of the [RCA] as a tool for the production of affordable housing pursuant to P.L.1985, c. 222 (C.52:27D-301 et al.), will impact on some proposed agreements awaiting approval, it is for a public purpose and for the public good that such contracts be declared void for the current and future housing obligation rounds.
[N.J.S.A. 52:27D-329.6b.]
In applying these new amendments, we are urged to resort to various devices to determine whether the amendments, particularly § 312g as amended, should be applied prospectively or retroactively. Hovnanian and Galloway argue that the amendment is a new rule of law that should be applied prospectively only. *237 FSHC responds that we should invoke the time of decision rule. It also argues that the plain language of the amendment clearly applies to any and all RCAs awaiting approval by COAH and that our July 7, 2008 opinion rendered the Galloway-Bridgeton RCA an agreement awaiting approval. In response to the latter argument, Hovnanian and Galloway emphasize the use of the word "some" in N.J.S.A. 52:27D-329.6b, the section that discusses the impact of the elimination of RCAs.
When interpreting a statute, our goal "is to interpret the statute consistent with the intent of the Legislature." Oberhand v. Dir., Div. of Taxation, 193 N.J. 558, 568, 940 A.2d 1202 (2008). We should consider "not only the particular statute in question, but also the entire legislative scheme of which it is a part." Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129, 527 A.2d 1368 (1987). We start with the plain language of the statute. Oberhand, supra, 193 N.J. at 568, 940 A.2d 1202; DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). Each word must be given its proper effect, and we cannot assume that "the Legislature used meaningless language." Med. Soc'y of N.J. v. N.J. Dep't of Law & Pub. Safety, 120 N.J. 18, 26, 575 A.2d 1348 (1990). We examine legislative history only if the language of the statute is unclear. Oberhand, supra, 193 N.J. at 568, 940 A.2d 1202; DiProspero, supra, 183 N.J. at 492-93, 874 A.2d 1039.
Here, the language of the statute leaves little doubt the Legislature intended to eliminate the use of RCAs and to do so immediately. It prohibited municipalities from entering new agreements and further directed that COAH could not review and approve any RCA as of July 17, 2008. Due to the express language of the statute, we need not resort to time-honored tools to determine whether a statute should be applied prospectively or retroactively. Here, the Legislature directed not only that the amendment to § 312 governing RCAs take effect immediately but also expressly addressed agreements still in the pipeline. Moreover, N.J.S.A. 52:27D-329.6b declares RCAs awaiting approval "void." Thus, the Galloway-Bridgeton RCA survives the 2008 amendments only if it can be considered an approved RCA.
The failure of the agency to provide findings of fact to support its April 2006 action is more than a procedural flaw to the prior approval. To be sure, we noted that the record contained data and information from which the agency could have found that the Galloway-Bridgeton RCA provided a realistic opportunity to provide affordable housing within convenient access to employment opportunities; yet the agency failed to make any findings to support its action. All "[a]dministrative agencies must `articulate the standards and principles that govern their discretionary decisions in as much detail as possible.'" Van Holten Grp. v. Elizabethtown Water Co., 121 N.J. 48, 67, 577 A.2d 829 (1990) (quoting Crema v. N.J. Dep't of Envtl. Prot., 94 N.J. 286, 301, 463 A.2d 910 (1983)). Without findings of fact supported by the record and supporting the ultimate determination, the agency decision is an arbitrary, capricious, and unreasonable action. In re Issuance of a Permit by Dep't of Envtl. Prot. to Ciba-Geigy Corp., 120 N.J. 164, 173, 576 A.2d 784 (1990). Fact-finding is, therefore, "`far from a technicality[, it] is a matter of substance.'" Ibid. (quoting N.J. Bell Tel. Co. v. Commc'ns Workers of Am., 5 N.J. 354, 375, 75 A.2d 721 (1950)). We set the April 2006 resolution aside because we could not readily determine whether the result was grounded in the record or the product of caprice or a whim. Having set aside the April 2006 resolution, the Galloway-Bridgeton *238 RCA lost its approved status and was subject to further review by COAH. Consequently, it was subject to the prohibitions of the recent amendments.
Any doubts that we may have had about the Legislature's intention to eliminate RCAs as a tool to provide affordable housing is resolved by an examination of the legislation recently passed by the Legislature. On January 19, 2010, Senator Lesniak and others introduced a bill to reform procedures governing the provision of affordable housing in New Jersey and to abolish COAH. On June 10, 2010, the Senate passed the bill known as S-1 by a vote of 28-3. The Assembly received the bill the same day and on December 13, 2010, substituted S-1 for the Assembly version of the bill, A-3447, which contained several differences from S-1. The Assembly passed this bill by a vote of 43-32. The bill returned to the Senate, which passed the bill on January 10, 2011. The Governor has conditionally vetoed the bill. Governor Christie, Conditional Veto Message to Senate Bill No. 1, Jan. 24, 2011.
We are mindful that discerning legislative intent from proposed or pending legislation has serious limitations. Perez v. Rent-A-Ctr., Inc., 186 N.J. 188, 217, 892 A.2d 1255, clarified by 188 N.J. 215, 902 A.2d 1232 (2006), cert. denied, 549 U.S. 1115, 127 S.Ct. 984, 166 L. Ed.2d 710 (2007). Nevertheless, over a three-year period the Legislature has steadfastly adhered to its position that RCAs are no longer a device or strategy to supply affordable housing units.
Indeed, the legislative history of S-1 bolsters this conclusion. The March 15, 2010 Senate Subcommittee substitute for S-1 provided some relief from the effects of the 2008 prohibition. Significantly, that provision does not appear in the bill adopted by the Legislature. Furthermore, the bill establishes a trust fund to allow the Commissioner of Community Affairs to award grants and loans to municipalities for housing projects and programs based on regional need. The bill does not allow transfer of units and funds between municipalities. Finally, none of the concerns or flaws in the bill identified by the Governor in his conditional veto message relate to the omission of RCAs as a device to provide affordable housing. Conditional Veto Message, supra. In short, at this time, the legislative intent seems clear. RCAs are not to be considered as a tool to satisfy affordable housing obligations.
Hovnanian and Galloway also argue that applying the RCA prohibition to them is manifestly unjust because it upsets settled rights of the various parties. In its petition for certification following our earlier opinion, Galloway represented that it had already paid more than $1.4 million to Bridgeton and Bridgeton had already used some of the funds. Hovnanian also accuses COAH and FSHC of unacceptable and inexcusable delay in initially considering this RCA and then prosecuting the appeal from the October 2006 COAH action.
Manifest injustice is "a nonconstitutional, equitable doctrine designed to prevent unfair results that do not necessarily violate any constitutional provision." State Troopers Fraternal Ass'n of N.J., Inc. v. State, 149 N.J. 38, 54, 692 A.2d 519 (1997) (citing Phillips v. Curiale, 128 N.J. 608, 625, 608 A.2d 895 (1992)). It is considered in certain situations "to bar the retroactive application of [a] statute...." Oberhand, supra, 193 N.J. at 562, 940 A.2d 1202. We cannot ignore, however, the 2008 amendments, specifically N.J.S.A. 52:27D-329.6b, which recognize that some agreements in the pipeline would fail due to this alteration of public policy.
Similarly, the doctrine of fundamental fairness "`serves to protect citizens *239 generally against unjust and arbitrary governmental action, and specifically against governmental procedures that tend to operate arbitrarily.'" Doe v. Poritz, 142 N.J. 1, 108, 662 A.2d 367 (1995) (quoting State v. Ramseur, 106 N.J. 123, 377, 524 A.2d 188 (1987) (Handler, J., dissenting)). In administrative agency cases, this doctrine has been invoked when the actions of government, though not quite rising to the level of a constitutional violation, nonetheless included aspects of unfairness that required intervention by the judiciary. Ibid.
Delay, especially involving COAH, has not been an isolated event and has not always been fatal. Hills Dev. Co. v. Twp. of Bernards, 103 N.J. 1, 26-31, 40-41, 510 A.2d 621 (1986); In re Petition of Howell Twp., 371 N.J.Super. 167, 185-88, 852 A.2d 258 (App.Div.), certif. denied, 182 N.J. 140, 861 A.2d 845 (2004); Sod Farm Assocs. v. Twp. of Springfield, 366 N.J.Super. 116, 131, 840 A.2d 885 (App.Div.2004). All of the cases cited involved delays substantially greater than ten days.
We further observe that all parties to the Galloway-Bridgeton RCA undertook considerable risk by effectuating the RCA while an appeal was pending. Cf. Dumont Lowden, Inc. v. Hansen, 38 N.J. 49, 52, 183 A.2d 16 (1962) (noting that a party proceeds at its peril if it takes action in conformity with an approval during the period within which an appeal may be filed). Parties who act in accordance with an approval under appellate review ordinarily do so at their peril. See Bernoskie v. Zarinsky, 394 N.J.Super. 421, 425-26, 927 A.2d 149 (App.Div.2007) (noting when judgment is reversed on appeal, funds received during pendency of appeal in partial satisfaction of the reversed judgment must be returned).
Consequently, we must recognize that COAH cannot directly re-approve the Galloway-Bridgeton RCA without exceeding its enabling act, which currently prohibits review and approval of an RCA. We, therefore, affirm the September 22, 2008 resolution.
Affirmed.
NOTES
[1] Hovnanian took over construction at Smithville, Inc. and agreed to build only 2400 new units with a minimum of thirty percent, or 720 homes, designated as age-restricted units. In doing so, the PUD was reduced from 4857 units to 3942 units. Pursuant to the 1979 Coast Area Facility Review Act approval for the Smithville PUD, sixty-one units had to be set aside for low-or moderate-income households. Id. at 4.
[2] In early December 2008, this court denied a joint motion filed by Galloway and Hovnanian for summary disposition.