**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0633-19

ANGELA PRESTOL and
HECTOR PRESTOL, her spouse,

     Plaintiffs-Appellants,

v.

HENPAL REALTY ASSOCIATES,
LLC, a/k/a HENPAL REALTY
ASSOCIATES, SUEZ WATER
NEW JERSEY, INC., f/k/a
UNITED WATER NEW JERSEY,
INC., and CITY OF HACKENSACK.

     Defendants-Respondents,

and

COUNTY OF BERGEN and
STATE OF NEW JERSEY,

     Defendants.

_____

Argued December 1, 2020 – Decided March 23, 2021

Before Judges Haas and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3643-17.

Manuel B. Sameiro, Jr. argued the cause for appellant (Davis, Saperstein & Salomon, PC, attorneys; Adam B. Lederman, on the brief).

Cynthia J. Birkitt argued the cause for respondent Henpal Realty Associates, LLC (Law Offices of James H. Rohlfing, attorneys; Cynthia J. Birkitt, on the brief).

Brian R. Ade argued the cause for respondent Suez Water New Jersey Inc. (Rivkin Radler LLP, attorneys; Brian R. Ade and Alexander G. Pappas, on the brief).

Ruby Kumar-Thompson argued the cause for respondent City of Hackensack (Cleary Giacobbe Alfieri Jacobs, LLC, attorneys; Ruby Kumar-Thompson, of counsel and on the brief).

PER CURIAM

In this trip and fall matter, plaintiffs Angela and Hector Prestol sued Henpal Realty Associates, LLC (Henpal), Suez Water New Jersey, Inc. (Suez), and the City of Hackensack (Hackensack) when plaintiff[1] fell after stepping in an approximate two-inch depression on a public roadway in front of the building where she worked. She contends the street's unsafe condition caused her to fall,

---

[1] Plaintiff's husband Hector Prestol sought per quod damages based on loss of consortium. We refer to Angela as plaintiff and Hector by his first name for clarity, intending no disrespect.

and she obtained liability expert reports to support her claims. She fractured her ankle and underwent surgery to address her injuries.

After the completion of discovery, defendants moved for summary judgment. As to Hackensack, the court concluded Angela failed to establish liability under the New Jersey Tort Claims Act (TCA), N.J.S.A 59:1-1 to 12-3 and dismissed Hector's derivative per quod claim. The court also dismissed plaintiffs' claims against Henpal and Suez under general negligence principles, and other bases. On appeal, plaintiffs argue the motion record contained disputed questions of material fact that warranted denial of defendants' motions. We disagree and affirm.

I.

We derive the following facts from the competent evidence submitted by the parties in support of, and in opposition to, the summary judgment motions, viewed in a light most favorable to plaintiffs. Brill v. Guardian Life Ins. of Am., 142 N.J. 520, 540 (1995). On October 23, 2015, plaintiff was crossing the street outside of the crosswalk directly across from Hackensack Physical Therapy, where she had worked for approximately fifteen years. Hackensack Physical Therapy was located at 343A Main Street in Hackensack in a building owned by Henpal.

3

Plaintiff stated she fell after stepping in what she initially described as a "big pothole" near the curb and which measured one and a half to two inches, injuring her right ankle and left knee. Plaintiff continued to experience pain a week after the incident and her doctor prescribed a foot brace and physical therapy. Plaintiff later visited Ralph Napoli, M.D. who, after reviewing a magnetic resonance imaging of her ankle, diagnosed plaintiff with a fractured right ankle, synovitis, and a partial tendon tear.

In their initial complaint, plaintiffs named Henpal, Hackensack, the County of Bergen, the State of New Jersey, and John Does and XYZ corporations as fictitious, unknown individual and entity defendants.[2] The complaint alleged that the defendants negligently inspected, repaired, and/or maintained the area which caused plaintiff's fall.

On September 5, 2018, plaintiffs' engineering expert, Kelly-Ann Kimiecik, P.E., submitted a report following a May 29, 2018 inspection in which she concluded that the incident "transpired due to negligence on behalf of the defendant(s)." She concluded the pavement was replaced as a result of trench reconstruction and noted the restoration "when backfilled and poorly compacted,

_____

[2] Bergen County was dismissed with prejudice on July 31, 2017, and the State of New Jersey was dismissed without prejudice on December 21, 2018.

results in . . . settlement action . . . until the crack width widens to the point of pavement spalling." Kimiecik reasoned that "over a period of time, exposure to the elements and live load impacts created by active motor vehicle traffic resulted in a breakdown of the asphalt pavement." She concluded "based on reasonable engineering probability, had the trench backfilling operations been performed with proper subgrade compaction at the subject accident location, then the effects of settlement would have been negligible."

Kimiecik also noted her observation that repairs had been performed at the scene "which attempted to alleviate the prior roadway pothole (deterioration) condition that created extremely hazardous conditions for the public," but that "the repairs . . . have deteriorated to [a point] where a pothole formation existed at the time of the inspection."

Further, she observed indicia of "water main work . . . in the roadway pavement, through the pavement subbase, at the plaintiff's incident location." Kimiecik referenced Google Maps photos of the scene from August 2012, observing that "[t]he deteriorated pavement condition . . . bespeaks long-term and continued existence of the same" and that because "the advanced stage of deterioration has occurred over a period of several years[,] . . . sufficient notice was made to correct this condition prior to the plaintiff's injury." She further

5

determined that the estimated cost of materials to repair the pothole was less than $200 and that the failure to mitigate the hazard "renders the failure to make the repairs palpably unreasonable."

Based on her investigation, Kimiecik concluded that "deterioration (surface depression/pothole) existing within the roadway yielded unsafe conditions for the public," and that "based on reasonable engineering probability," the pothole caused plaintiff's injury. Further, because of the "type of roadway parking layout" at the scene and the fact that the pothole was in front of a physical therapy facility without "warnings of the hazardous condition," Kimiecik opined that the pothole was "an extremely dangerous condition for pedestrians."

Jim Rittgers, an employee for CJ Lombardo Real Estate (Lombardo), Henpal's property manager and managing agent, testified at his deposition that Henpal was "responsible for the common areas of the property such as the parking lots and sidewalks" as well as the roofs, but that "[t]he streets are not our responsibility." After reviewing photographs of the area surrounding the pothole, Rittgers stated that there had been "utility work in front of that building specifically," and that he saw "numerous patches and work done right in front

6

of the handicap sign." He also indicated that "[t]hey may have dug up the street there for access to the water or gas or something at some point."

On November 8, 2018, Joseph Inglima, a representative of the Hackensack Department of Public Works (DPW) testified in deposition that he had no knowledge of the policies and procedures regarding repair of potholes at that time of plaintiff's accident as he did not work for the DPW until September 2017. He did, however, testify that Suez would be responsible for repairing pavement where they conduct an excavation in order to maintain or repair city water lines.

The following week, plaintiffs filed a motion to extend discovery, to amend their complaint in order to add Suez as a defendant, and to compel a different representative of Hackensack to provide deposition testimony. The court granted plaintiffs' motion and plaintiffs accordingly filed an amended complaint on December 5, 2018, which included Suez as a defendant, in the place of one of the fictitious party defendants.

In January 2019, Jesse D'Amore, former superintendent of the Hackensack DPW, was deposed. D'Amore testified that the DPW was responsible for repairing potholes and "taking care of curbs [and] sidewalks" but that water main repairs were contracted out. He indicated that a hotline was put in place allowing residents to call and report potholes. D'Amore also stated that

7

beginning in the middle of winter, the Hackensack "[s]treet crew [was] responsible for the potholes."

D'Amore also testified that Hackensack was responsible for maintenance and repair of the street, but that either "United Water," "Hackensack Water Company," or Suez was responsible for water repairs. He also noted that he "would imagine" that Hackensack would be notified of water repairs by Suez and that a Hackensack project manager "would oversee the project that the water company . . . was opening up the street for [them] to do."

Finally, Jeffrey Picinich, a department superintendent at Suez, was deposed on June 19, 2019. He testified regarding work orders associated with 343A Main Street on December 17, 1997, January 15, 1998, and July 6, 2011, and indicated that a permit was not necessary for specific utility work at these times, as utility companies were granted annual permits by Hackensack. Picinich acknowledged that photos of the scene from 2012 and 2018 showed a utility cut. While he stated that Suez had no record of making such a cut, it was "possible" that Suez did the work in that area in 1997.

On August 2, 2019, defendants individually moved for summary judgment. Hackensack noted that "the managing agent for Henpal . . . conducts regular inspections of the property in front of 343A Main Street" and that

8

Rittgers "could not recall observing a pothole or crack in proximity to the property." It also noted that it "maintained a hotline for citizens to call [Hackensack] to alert members of the DPW that a pothole/street crack required repair" and that it received no notice of the pothole.

Suez argued that plaintiffs' claims against it were "barred by the two[-]year statute of limitations for personal injury actions, N.J.S.A. 2A:14-2(a)." It also contended that plaintiffs' claims were barred by the ten-year statute of repose, N.J.S.A. 2A:14-1.1. In this regard, Suez claimed that "it performed work in front of 343[A] Main Street" in 1997 and 2011, but that the 2011 work "did not require excavation of the roadway," and that its records did not indicate whether the 1997 work included an excavation. Separately, it asserted that plaintiffs' amended complaint, filed on December 5, 2018, was time barred as it did not relate back to the filing of the May 25, 2017 initial complaint because plaintiffs "did not exercise due diligence in their investigation and identification" of Suez prior to Inglima's deposition.

Henpal contended it was undisputed that plaintiff fell in the roadway, which it neither controlled nor had an obligation to maintain. In this regard, Henpal stressed that it was not responsible for the pothole because Inglima

testified that Hackensack would be responsible for the roadway up to the curb. Henpal also claimed that it had no notice of the pothole.

Plaintiffs opposed defendants' motions and submitted a supplemental report from Kimiecik. She noted that none of her previous conclusions were changed by her supplemental review, but further opined that: 1) in 1997 "[t]he water company created the utility cut and failed to properly restore the pavement region that resulted in the pothole formation"; 2) "[t]he property owner/manager failed to inspect and maintain the gutter region in accordance with . . . municipal ordinances" and "two work orders produced by Suez indicate[d] that the calls related to these work orders were made by Lombardo; thus, bespeaking their understanding of the water company's facilities at the accident location"; and 3) Hackensack failed to maintain and inspect the accident location because the utility cut maintenance period had long expired and Hackensack "repetitively undergoes construction efforts."

On August 30, 2019, after hearing oral arguments, the court granted defendants' motions for summary judgment in a twenty-four-page written opinion and corresponding orders. In its written opinion, it found that "[t]he pothole was next to the curb on the street as can be seen in the exhibit photos located between two handicap parking spaces in front of 343A Main Street." It

noted that those handicap parking spaces "were installed at the request of [plaintiff's employer] for the benefit of its patients" and that the "paint separating the two spaces goes directly into the pothole."

The court found that the street had metered parking, which it was Hackensack's responsibility to enforce, and that Hackensack admitted "that one of its employees conducted meter collections on Main Street [one to two] times per week during the time period in issue" and that "it is responsible for maintaining and repairing the roadway surface where the subject pothole was located." To this end, the court found that Hackensack would send a street crew out each winter to check for potholes to repair.

Nonetheless, it found that Hackensack had neither actual nor constructive notice of the pothole under N.J.S.A. 59:4-3 because "there [was] no evidence that any specific complaints were made to [Hackensack] about the conditions" at 343A Main Street and plaintiffs "failed to produce evidence to support the premise that the condition had existed for such a period of time and was of such an obvious nature that [Hackensack] should have discovered it."

The court determined that the pothole is located in the gutter in front of the commercial property owned by Henpal, and that Henpal hired Lombardo to perform "regular inspections of the entire property, including the front of

11

[plaintiff's employer's building] to pick up garbage and any debris, among other things." The court also considered that Kimiecik concluded that Suez created the utility cut next to the water valve "and failed to properly restore the pavement region that resulted in the pothole formation."

The court first concluded that summary judgment was appropriate as to Henpal because Henpal "is not responsible for repairs or maintenance of the public roadway" in that area. In this regard, it determined that Henpal had no duty "to maintain or repair the public roadway where [p]laintiff fell." Notwithstanding a Hackensack ordinance allegedly requiring property owners to repair or maintain abutting sidewalks, the court explained that such an ordinance does not create a duty in tort.

Second, the court determined that plaintiffs failed to prove each of the elements of the TCA, and accordingly granted Hackensack's motion. It concluded that the pothole was not a "dangerous condition" covered by N.J.S.A. 59:4-1(a) because "it was homogenous with the surrounding roadway . . . [and] was nothing more than a 'minor imperfection' that clearly did not create a 'substantial' risk of injury."

The court also determined that since plaintiff was jaywalking, "[i]t was not foreseeable that [p]laintiff would have been using that portion of the

roadway as a pedestrian." The court explained that Hackensack's failure to repair the pothole was not palpably unreasonable because it "maintained a hotline for citizens to alert members of the DPW of such conditions and designated the DPW's street crew to make repairs that it was notified of."

Finally, the court concluded that plaintiffs' claims against Hackensack for damages relating to emotional distress and pain and suffering were barred by N.J.S.A. 59:9-2(d) because plaintiff's injuries did not constitute a "permanent loss of a bodily function" as required by the TCA. Further, it denied Hector's per quod claim because he did not meet the requirements in N.J.S.A. 59:9-2 as he produced no evidence of a therapist or other medical professional "to meet the requirement for objective permanent substantial injury to his own person" or "proof of incurring medical treatment expenses" in excess of $3,600.

As to Suez, the court determined that summary judgment was appropriate because plaintiffs' claims were barred by the statute of limitations for personal injury actions, N.J.S.A. 2A:14-2(a). To this end, it concluded that plaintiffs' claims in their amended complaint do not relate back to the original filing because plaintiffs "did not diligently seek to identify S[uez] before the limitations period expired or within a reasonable time thereafter."

A-0633-19

The court also determined that plaintiffs' negligent construction claim against Suez was barred by the ten-year statute for improvements to property under N.J.S.A. 2A:14-1.1. In doing so, it found that Suez's 2011 maintenance work did not require roadway excavation, and that even if Suez's 1997 work "did involve excavation, backfilling, or paving," it was undisputed that the 1997 work occurred over ten years prior to the accident.

The court determined that Suez did not owe a duty of care to plaintiff and that plaintiffs failed to show that Suez had actual or constructive notice of the pothole. Finally, the court concluded the motion record failed to contain competent proofs for a jury to conclude that Suez's 1997 maintenance work created the pothole in 2015. This appeal followed.

Plaintiffs contend on appeal that there were general questions of material fact that precluded the entry of summary judgment. According to plaintiffs, those genuine issues of material fact included whether the pothole was a dangerous condition, whether Hackensack had notice of the pothole, whether its actions were palpably unreasonable, and whether plaintiff suffered a permanent injury.

With respect to Suez, plaintiffs contend the trial court erred in determining its claims were time barred and subject to the statute of repose. Plaintiffs also

14

contend the court incorrectly resolved disputed factual questions regarding Suez's notice and whether it and Henpal were liable under general negligence principles.

## II.

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Summary judgment must be granted if the court determines "that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540. We accord no special deference to the trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (citation omitted).

Applying these standards and the provisions of the TCA discussed below, we agree with the motion judge that plaintiffs failed to establish that Hackensack had actual or constructive notice of the pothole or that its conduct in failing to observe and maintain the pothole was palpably unreasonable. We also agree

15

with the court that the motion record failed to create a genuine and material question of fact regarding Henpal and Suez's liability under general negligence principles.

A.    Hackensack

Public entity liability is restricted under the TCA.  Polzo v. Cty. of Essex, 209 N.J. 51, 55 (2012) (Polzo II).  Generally, a public entity is "immune from tort liability unless there is a specific statutory provision imposing liability." Kahrar v. Borough of Wallington, 171 N.J. 3, 10 (2012) (citing Collins v. Union Cty. Jail, 150 N.J. 407, 413 (1997)); see also N.J.S.A. 59:1-2, 2-1.  Accordingly, "immunity for public entities is the general rule and liability is the exception." Kemp v. State, 147 N.J. 294, 299 (1997); accord D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 134 (2013) (describing that rule as the "guiding principle" of the TCA (quoting Coyne v. State Dep't of Transp., 182 N.J. 481, 488 (2005))).

"Potholes and depressions are a common feature of our roadways. However, 'not every defect in a highway, even if caused by negligent maintenance, is actionable.'"  Polzo II, 209 N.J. at 64 (quoting Polyard v. Terry, 160 N.J. Super. 497, 508 (App. Div. 1978)).  Under the TCA:

> A public entity is liable for injury caused by a
> condition of its property if the plaintiff establishes that

the property was in dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

     a. a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

     b. a public entity had actual or constructive notice of the dangerous condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.

     Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable.

[N.J.S.A. 59:4-2.]

"A public entity shall be deemed to have actual notice of a dangerous condition . . . if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character." N.J.S.A. 59:4-3(a). "A public entity shall be deemed to have constructive notice of a dangerous condition . . . only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character." N.J.S.A. 59:4-3(b).

17

"The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it . . . .'" Arroyo v. Durling Realty, LLC, 433 N.J. Super. 238, 243 (App. Div. 2013) (alteration in original) (quoting Sims v. City of Newark, 244 N.J. Super. 32, 42 (Law Div. 1990)). "Whether a public entity is on actual or constructive notice of a dangerous condition is measured by the standards set forth in N.J.S.A. 59:4-3(a) and (b), not by whether [for example] 'a routine inspection program' by the [public entity] . . . would have discovered the condition." Polzo II, 209 N.J. at 68.

As the motion judge concluded that plaintiffs failed to satisfy each of the elements of the TCA necessary to pursue their claims against Hackensack, we need not address each element specifically. We agree that summary judgment was appropriate because plaintiffs did not establish that Hackensack had actual or constructive notice of a dangerous condition, and even assuming the motion record created a factual question on that issue, Hackensack's actions were not palpably unreasonable.

We initially note that at oral argument in the trial court, plaintiffs conceded that Hackensack did not have actual notice of the pothole. That concession was consistent with the motion record which failed to suggest

18

Hackensack received complaints, accidents, or concerns regarding any issue with the public roadway in front of her employer's building.

Instead, before us plaintiffs contend Hackensack had constructive notice of the alleged dangerous condition based on:  1) an August 2012 Google Maps photograph purportedly showing the depression in the roadway and the existence of "blue striping" purportedly painted by Hackensack employees or agents in the pothole and the surrounding area; 2) observations that could, and should, have been made by municipal employees working in the vicinity of the pothole; and 3) the expert opinions of Kimiecik.  We disagree that any of these "facts" individually, or collectively, create a genuine and material question of fact regarding Hackensack's constructive notice.

First, plaintiffs failed to present competent evidence to establish the length of time the pothole existed.  The Google Maps photographs, most of which are undated, do not clearly identify the pothole.  Further, even indulging plaintiffs' arguments that a depression can be seen, the photographs do not show its extent (i.e., length or depth) to establish Hackensack's constructive notice.  As plaintiffs offered the photographs to assert the truth of a matter in dispute— rather than for demonstrative or illustrative purpose or on an undisputed point— it was necessary for the photographs to be properly authenticated under N.J.R.E.

901. In any event, as noted, the photographs do not establish the condition of the pothole in 2015, or its condition in the interim period.

Nor did plaintiffs establish who painted the blue stripes or when. Even were we to assume Hackensack employees performed that task, the record does not establish, directly or by reasonable inference, the condition of the depression at the time the painting occurred. Indeed, the Google Maps photograph shows fading in the blue lines in and around the roadway area where plaintiff fell.

Similarly, the Kimiecik reports, which substantially rely upon the aforementioned deficient proofs, do not establish when the pothole first manifested itself or when it degraded to the alleged dangerous condition causing plaintiff's fall and injuries to support the expert's opinion that Hackensack had constructive notice. As was the trial court, we are unpersuaded that Hackensack should have observed the minor depression in the roadway through its agents and employees who serviced the parking meters and otherwise traversed along the roadway to perform their municipal functions.

In this regard, the pothole abutted a parking space on a roadway where cars regularly parked and was not of a magnitude such that one would expect an employee to observe it in the regular course. See Polzo II, 209 N.J. at 68. Consequently, we are convinced that no reasonable jury could have concluded

that Hackensack had actual or constructive notice of the pothole in a sufficient time prior to plaintiff's injury to have taken measures to protect against it.

Absent actual or constructive notice, Hackensack could not have acted in a palpably unreasonable manner. See Maslo v. City of Jersey City, 346 N.J. Super. 346, 350-51 (App. Div. 2002). Apart from proof of notice, to establish liability against a public entity under N.J.S.A. 59:4-2, a plaintiff must establish a prima facie case that the action or inaction of the public entity was "palpably unreasonable." Coyne, 182 N.J. at 493; N.J.S.A. 59:2-3(d).

The term "palpably unreasonable" implies "behavior that is patently unacceptable under any given circumstance." Muhammad v. N.J. Transit, 176 N.J. 185, 195 (2003) (citations omitted); see also Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 459 (2009) (to constitute "palpably unreasonable" conduct, "it must be manifest and obvious that no prudent person would approve of [the] course of action or inaction" (citations omitted)). Further, palpably unreasonable conduct "implies a more obvious and manifest breach of duty" than negligence and "imposes a more onerous burden on the plaintiff." Williams v. Phillipsburg, 171 N.J. Super. 278, 286 (App. Div. 1979).

Whether the public entity's behavior was palpably unreasonable is generally a question of fact for the jury. See Vincitore v. N.J. Sports &

21

Exposition Auth., 169 N.J. 119, 130 (2001) (citations omitted). However, a determination of palpable unreasonableness, "like any other fact question before a jury, is subject to the court's assessment whether it can reasonably be made under the evidence presented." Maslo, 346 N.J. Super. at 351 (quoting Black v. Borough of Atl. Highlands, 263 N.J. Super. 445, 452 (App. Div. 1993)). Accordingly, "the question of palpable unreasonableness may be decided by the court as a matter of law in appropriate cases." Maslo, 346 N.J. Super. at 350 (citing Garrison v. Twp. of Middletown, 154 N.J. 282, 311 (1998)).

As noted, there was no reported problem of a pothole in front of plaintiff's employers' building, where she had worked for approximately fifteen years. Further, Hackensack's maintenance and notice programs in place at the time of the incident were not unreasonable. There is no dispute that Hackensack's inspection of its public streets was a discretionary activity. Given the limited resources of municipalities, it is not within our power to impose a more comprehensive pothole inspection and repair program on Hackensack. See Polzo II, 209 N.J. at 69. Under these circumstances, we conclude no rational factfinder could find that it was palpably unreasonable for Hackensack not to have repaired the pothole that caused plaintiff's unfortunate injury.

B.    Henpal

22

Plaintiffs argue that Henpal had a duty to maintain the area in front of 343A Main Street because its tenant's patrons intended to use the area in which the pothole was located. Plaintiffs further assert that the trial court misapplied Monaco v. Hartz Mountain Corp., 178 N.J. 401 (2004), when it concluded that a commercial landowner's duty did not extend past the adjacent sidewalk. Instead, plaintiffs contend that the factors outlined in Monaco support the imposition of a duty on Henpal. We disagree. Henpal, as a commercial property owner, clearly was not liable for plaintiff's injuries as it had no role in the creation of the pothole or knowing of its existence, and it had no duty to maintain any part of the public roadway.

"To establish a prima facie case of negligence, a plaintiff must establish the following elements: (1) duty of care, (2) breach of that duty, (3) proximate cause, and (4) damages." D'Alessandro v. Hartzel, 422 N.J. Super. 575, 579 (App. Div. 2011) (citing Conklin v. Hannoch Weisman, 145 N.J. 395, 417 (1996)). Whether a party owes a legal duty, as well as the scope of the duty owed, are questions of law for the court to decide. Carvalho v. Toll Bros. & Devs., 143 N.J. 565, 572 (1996). "The inquiry has been summarized succinctly as one that 'turns on whether the imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations

of public policy.'" Olivo v. Owens–Illinois, Inc., 186 N.J. 394, 401 (2006) (quoting Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)). We examine foreseeability, Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 502-03 (1996), as well as such factors as "the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Acuna v. Turkish, 192 N.J. 399, 414 (2007) (internal quotation marks and citation omitted).

In Monaco, the Court stated that a commercial landlord owes a duty to:

> [E]xercise reasonable care for an invitee's safety. That includes making reasonable inspections of its property and taking such steps as are necessary to correct or give warning of hazardous conditions or defects actually known to the landowner. The landowner is liable to an invitee for failing to correct or warn of defects that, by the exercise of reasonable care, should have been discovered.
>
> [178 N.J. at 414-15 (citations omitted).]

A commercial landlord's liability may extend "to cases in which the landowner had no control over the dangerous condition and the condition was not located on its property." Id. at 415. Indeed, "neither ownership nor control is the sole determinant of commercial landlord liability when obvious danger to an invitee is implicated." Id. at 417. Instead, "whether [a commercial landlord] owes a duty of reasonable care toward another [individual] turns on whether the

24

imposition of such a duty satisfies an abiding sense of basic fairness under all of the circumstances in light of considerations of public policy." Id. at 418 (quoting Hopkins, 132 N.J. at 439).

In Monaco, a traffic sign situated on the abutting sidewalk of the property of a commercial landlord became dislodged and the landowner's invitee was injured. Id. at 404. Our Supreme Court found that the landlord owed a duty to the invitee to maintain safe premises, including areas of ingress and egress, and to inspect and give warning of the dangerous condition. Id. at 413-14.

Unlike in Monaco, Henpal neither installed nor maintained the area of the public roadway where plaintiff fell or had any responsibility for doing so. At most, its tenant, Hackensack Physical Therapy, requested that Hackensack put handicap parking spaces in front of that area. Further, Henpal conducted inspections of the sidewalks and there was no evidence it had actual or constructive notice of any dangerous condition. It simply would be unfair to hold that Henpal had a duty to plaintiff to warn her of the condition in the public roadway for which it was unaware and had no role in creating.

C.    Suez

As to Suez, plaintiffs argue that the trial court erred in concluding Suez did not have actual or constructive notice of the pothole because it "went back

to the very location in July[] 2011 to access the water valve at issue." They further contend that, in any event, they were not obligated to establish Suez's notice as it created the dangerous condition according to their expert's net opinion. We disagree.

Under New Jersey law, there are two distinct theories of recovery in a trip-and-fall personal injury action. When an alleged dangerous condition is not caused by a defendant, a plaintiff must establish actual or constructive notice. However, where the defendant's actions create a foreseeable risk of harm, an injured plaintiff need not prove either actual or constructive notice. Tymczyszyn v. Columbus Gardens, 422 N.J. Super. 253, 264 (App. Div. 2011); Smith v. First Nat'l Stores, 94 N.J. Super. 462, 466 (App. Div. 1967); Maugeri v. Great Atl. & Pac. Tea Co., 357 F.2d 202, 203 (3d Cir. 1966); Model Jury Charge (Civil), 5.20F(5), (9) (rev. Nov. 2019).

As plaintiffs rely on Kimiecik's initial and supplemental reports in support of their conclusion that Suez is responsible for plaintiff's injuries, we briefly discuss the relevant evidentiary rules and case law regarding the admissibility of expert opinions. A determination on the admissibility of expert testimony is committed to the sound discretion of the trial court. Townsend, 221 N.J. at 52 (citing State v. Berry, 140 N.J. 280, 293 (1995)). A trial court's grant or denial

of a motion to preclude expert testimony is entitled to deference on appellate review. The Supreme Court has instructed: "[W]e apply [a] deferential approach to a trial court's decision to admit expert testimony, reviewing it against an abuse of discretion standard." Id. at 53 (second alteration in original) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371-72 (2011)).

Two rules of evidence frame the analysis for determining the admissibility of expert testimony. N.J.R.E. 702 identifies when expert testimony is permissible and requires the experts to be qualified in their respective fields. N.J.R.E. 703 addresses the foundation for expert testimony. Expert opinions must "be grounded in facts or data derived from[:] (1) the expert's personal observations, or (2) evidence admitted at the trial, or (3) data relied upon by the expert which is not necessarily admissible in evidence but which is the type of data normally relied upon by experts." Townsend, 221 N.J. at 53 (quoting Polzo v. Cty. of Essex (Polzo I), 196 N.J. 569, 583 (2008)). "The net opinion rule is a 'corollary of [N.J.R.E. 703] . . . which forbids the admission into evidence of an expert's conclusions that are not supported by factual evidence or other data.'" Id. at 53-54 (alteration in original) (quoting Polzo I, 196 N.J. at 583).

Therefore, an expert is required to "'give the why and wherefore' that supports the opinion, 'rather than a mere conclusion.'" Id. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, L.L.C., 216 N.J. 115, 144 (2013)). The net opinion rule directs that experts "be able to identify the factual bases for their conclusions, explain their methodology, and demonstrate that both the factual bases and the methodology are reliable." Id. at 55 (quoting Landrigan v. Celotex Corp., 127 N.J. 404, 417 (1992)). In short, the net opinion rule is "a prohibition against speculative testimony." Harte v. Hand, 433 N.J. Super. 457, 465 (App. Div. 2013) (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1998)).

Here, there was no competent evidence in the record, even after providing plaintiffs with all reasonable inferences, to suggest Suez had actual or constructive notice of the dangerous conditions. The only evidence that plaintiffs point to is the fact that Suez did work near the site in July 2011. Even assuming Suez performed additional work near 343A Main Street, that work is insufficient to establish actual or constructive notice of an approximately two-inch pothole near the curb that plaintiff fell in nearly four years later. Indeed, an employee of Suez stated in their deposition that the 2011 work only entailed turning off 343A Main Street's water valve which did not require an examination

of any work in the street.  As noted previously, the Google Maps photographs do not competently show the existence or extent of a pothole in August 2012, let alone July 2011.

Further, Kimiecik's reports as to Suez are general, speculative, and conclusory.  At bottom, she concludes that Suez created the asphalt cut in the road in 1997 and negligently repaired the area contrary to ASTM and New Jersey Department of Transportation standards by failing to properly fill the hole and compact it correctly.  As a result of this alleged negligent work, Kimiecik opines that Suez is responsible for the two-inch depression that formed near the curb at some indeterminate point during the next seventeen years.  Kimiecik's opinions, however, are unsupported by any objective data other than her post-accident observations.

Moreover, Kimiecik's opinions are speculative as they fail to consider or address in any substantive manner the other conditions unrelated to Suez's work that could have caused the pothole's formation during the seventeen-year period between Suez's 1997 repair and plaintiff's 2015 fall.  To this point, Kimiecik does not conclude that the pothole would not have formed even if Suez correctly completed the work consistent with the standards upon which she relied.  In fact, she opines that the pothole's creation was caused, in part, by Hackensack's

  A-0633-19

failure to maintain the roadway as well as exposure to the elements and live load impacts. Considering the significant temporal gap between the 1997 excavation and repair and plaintiff's 2015 fall, Kimiecik's opinion as to Suez's responsibility fails to contain the necessary "why and wherefore," Townsend, 221 N.J. at 54, to support her conclusion that Suez is responsible for the two inch depression in the roadway.

In light of our decision, we need not address the court's alternate bases for granting summary judgment to Suez; namely that: 1) it owed no duty of care to plaintiff, and 2) the statute of limitations and statute of repose applied barring plaintiffs' claims. To the extent we have not addressed any of the parties' remaining arguments it is because we have determined that they are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION