**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1337-19

C.M.,

      Petitioner-Appellant,

v.

SUSSEX COUNTY BOARD
OF SOCIAL SERVICES,

      Respondent-Respondent.

_____

Submitted October 25, 2021 – Decided November 17, 2021

Before Judges Messano and Enright.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

C.M., appellant pro se.

Andrew J. Bruck, Acting Attorney General, attorney for respondent Division of Medical Assistance and Health Services (Melissa H. Raksa, Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, Deputy Attorney General, on the brief).

Hollander, Strelzik, Pasculli, Hinkes, Vandenberg, Hontz & Olenick, LLC, attorneys for respondent Sussex County Board of Social Services (Michelle L. Olenick, on the brief).

PER CURIAM

Petitioner C.M.[1] appeals from the October 28, 2019, final agency decision of the Division of Medical Assistance and Health Services (DMAHS) terminating her household's Medicaid benefits. We reverse and remand.

The calculation of C.M.'s household income for 2019 forms the basis for the instant appeal. When this matter commenced, C.M. lived in Sussex County, New Jersey with her husband, J.L.M., and their four tax-dependent children. In 2018, C.M.'s family was financially eligible for New Jersey FamilyCare (NJFC) Medicaid benefits based on the household's income for the 2017 tax year. But in December 2018, the Sussex County Board of Social Services (the County Welfare Agency, or CWA) discovered C.M.'s earnings were $3,917.26 per month, that her husband's business losses equated to $1,217.50 per month, and that her son, J.M., had earnings from his employment at ShopRite averaging $1,348.91 per month (J.M. had started his part-time job with ShopRite in May 2018). Thus, the CWA calculated petitioner's projected household income for

_____

[1] We use initials to protect the privacy interests of petitioner and her family members.

2019 to be $4,048.67 per month, which exceeded the Modified Adjusted Gross Income (MAGI) limit of $3,881 per month for the household.[2]  Accordingly, by letter dated December 27, 2018, the CWA informed C.M. that her Medicaid benefits, as well as those of her husband and their three older children, would be terminated on January 31, 2019, and her youngest child's benefits would end on March 31, 2019.

C.M. appealed the termination, and her request was transmitted to the Office of Administrative Law (OAL).  The ALJ conducted a fair hearing on February 25, 2019, and on March 4, 2019, she issued an initial decision reversing the termination.  Noting J.M. was a college student, the ALJ concluded it could not "be assumed at this point" that J.M. would continue to work at ShopRite consistently throughout 2019 so that he would be required to file a 2019 tax return.

In May 2019, DMAHS rejected the ALJ's initial decision and affirmed the termination of benefits for C.M.'s household.  DMAHS found the CWA properly

---

[2]  This MAGI limit is reflected in the merits briefs of C.M. and the CWA, as well as the March 4, and September 3, 2019 opinions of Administrative Law Judges (ALJs) respectively; respondent DMAHS asserts the MAGI limit for 2019 was $3,978.  It is unnecessary for us to resolve the conflicting figures, because as of December 2018, C.M.'s projected household income for 2019 exceeded both amounts.

considered J.M.'s prospective income as of December 2018 when assessing the family's household income, and that the CWA appropriately informed C.M. her household Medicaid benefits would terminate based on its projection C.M.'s household income would exceed the MAGI threshold.

In June 2019, C.M. sought emergent relief before us. We determined there were "factual disputes regarding whether [J.M.] will continue to work similar hours throughout the 2019 tax year, whether he will be required to file a tax return for the 2019 tax year, and whether his projected average monthly income would disqualify the family from Medicaid/[NJFC] Program benefits." Therefore, we stayed the termination of benefits and on June 6, 2019, we remanded the matter "for a plenary hearing before the [OAL] regarding [J.M.]'s projected work schedule and income for the 2019 tax year."

A different ALJ conducted the remand hearing on August 30, 2019. C.M. and J.M. each provided testimony at the hearing. C.M. stated that J.M. worked at ShopRite "temporarily" on a "part[-]time" basis; J.M. testified he "stopped working at Shop[]Rite at the end of March" 2019, when he left college and moved back home. He stated he only used his income from ShopRite "to pay for [his] rent . . . , utilities and food expenses." J.M. further testified he had not

received any other income in 2019 and had not applied for unemployment insurance.

In her September 3, 2019 decision, the ALJ found that J.M.'s yearly gross income for 2019 as of August 30 was $3,710.63. She further concluded that J.M. had "not been employed for five months and there is no indication of future employment." Thus, the ALJ's initial decision following our remand reversed the agency's termination decision and reinstated Medicaid benefits for C.M.'s household. On October 28, 2019, DMAHS rejected the ALJ's initial decision and terminated petitioner's benefits effective February 1, 2019. In its October 28 decision, DMHAS acknowledged our remand order, but concluded that J.M.'s updated income information was "not available to the [CWA] in December 2018, nor was it part of the record at the first . . . hearing before [the] ALJ . . . ." Accordingly, it found "[i]t was reasonable for [the CWA] to predict that Petitioner's son would remain employed at an estimated monthly salary of $1,348.91," and that "Petitioner's household's eligibility was properly terminated." C.M. sought to stay the October 28 order pending appeal and we granted her request.

C.M. asks us to consider the following arguments on appeal:

> POINT I: THE AGENCY VIOLATED THE INCOME
> COUNTING RULES OF THE AFFORDABLE CARE

A-1337-19

ACT [ACA] WHEN THEY INCLUDED THE EXEMPT INCOME OF A TAX-DEPENDENT INTO THE HOUSEHOLD UNIT'S INCOME CALCULATION.

POINT II: THE AGENCY INCORRECTLY USED PROJECTED FUTURE INCOME OF THE APPLICANT'S TAX-DEPENDENT SON AS A MEANS TO TERMINATE THE HEALTH BENEFITS OF THE APPLICANT'S HOUSEHOLD.[3]

Appellate courts have a limited role in reviewing the decision of an administrative agency. In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). As such, a strong presumption of reasonableness is afforded to an agency's exercise of its statutorily delegated responsibility, City of Newark v. Nat'l Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980), and its factual findings are entitled to deference, Utley v. Bd. of Rev., Dep't of Labor, 194 N.J. 534, 551 (2008) (citing Jackson v. Concord Co., 54 N.J. 113, 117-18 (1969)).

---

[3] In her reply brief, C.M. raises two additional arguments, i.e., that "the agency decision, which included the projected income of a tax dependent, does not conform to federal regulations," and "the agency violated federal income counting guidelines mandated by the [ACA] and did not adhere to the tax filing concepts for the taxable year in which eligibility for Medicaid was being determined." Given our conclusion that reversal is warranted and considering these arguments were raised in C.M.'s reply brief, we need not address them. See Pannucci v. Edgewood Park Senior Hous. – Phase 1, LLC, 465 N.J. Super. 403, 409-10 (App. Div. 2020) (citing State v. Smith, 55 N.J. 476, 488 (1970) (noting impropriety of raising argument for first time in reply brief)).

A-1337-19

We will not upset the determination of an administrative agency absent a showing "that it was arbitrary, capricious or unreasonable, that it lacked fair support in the evidence, or that it violated legislative policies[.]" Parascandolo v. Dep't of Labor, Bd. of Rev., 435 N.J. Super. 617, 631 (App. Div. 2014) (quoting Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963)). "Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of circumstances." Worthington v. Fauver, 88 N.J. 183, 204 (1982) (quoting Bayshore Sewerage Co. v. Dept. Environ. Protection, 122 N.J. Super. 184, 199 (Ch. Div. 1973)).

Nonetheless, we are not tethered to an agency's interpretation of a statute or its decision on a legal issue. See Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Env't Prot., 191 N.J. 38, 48 (2007). Moreover, when an appellate court directs an administrative agency to take action, "the appellate judgment becomes the law of the case and the agency is under a peremptory duty not to depart from it." Lowenstein v. Newark Bd. of Educ., 35 N.J. 94, 116-17 (1961). Whether or not in agreement with the court, agencies have "a duty to obey the mandate of [the Appellate Division] 'precisely as it is written.'" In re Denial of Reg'l Contribution Agreement Between Galloway Twp. & City of Bridgeton, 418 N.J. Super. 94, 100-01 (App. Div. 2011) (quoting Flanigan v. McFeely, 20

N.J. 414, 420 (1956)). An appellate court's instructions "must be enforced as written, and relief from its direction 'can be had only in the appellate court whose judgment it is.'" Tomaino v. Burman, 364 N.J. Super. 224, 233 (App. Div. 2003) (quoting In re Plainfield-Union Water Co., 14 N.J. 296, 303 (1954)). "[T]he very essence of the appellate function is to direct conforming judicial action." Ibid.; see also Pritchett v. State, 248 N.J. 85, 110, 113 (2021) (confirming that any relief from the court's remand direction can be had only in the courts, even if flawed).

Medicaid is considered a "'cooperative federal-state endeavor' where, in return for federal monies, states must comply with federal requirements." A.B. v. Div. of Med. Assistance & Health Servs., 407 N.J. Super. 330, 342 (App. Div. 2009) (quoting L.M. v. State, Div. of Med. Assistance & Health Servs., 140 N.J. 480, 484 (1995)). Participating states must create "reasonable standards . . . for determining eligibility for and the extent of medical assistance . . . [that is] consistent with the objectives' of the Medicaid program." L.M., 140 N.J. at 484 (quoting 42 U.S.C. § 1396a(a)(17)(A)). The purpose of Medicaid is to "provide medical assistance to the poor[.]" Estate of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super 210, 217 (App. Div.

2004) (quoting <u>Mistrick v. Div. of Med. Assistance & Health Servs.</u>, 154 N.J. 158, 165 (1998)); <u>see also</u> 42 U.S.C. § 1396-1.

The NJFC program was created "to help New Jersey's uninsured children and certain low-income parents and guardians to have affordable health coverage." <u>S.J. v. Div. of Med. Assistance & Health Servs.</u>, 426 N.J. Super. 366, 368, n.1 (App. Div. 2012) (citations and internal quotation marks omitted). As part of the NJFC program, DMAHS oversees the administration of Medicaid benefits. <u>See generally</u> N.J.A.C. 10:78-1.1 to - 11.5. CWAs are required to estimate a household's prospective income to determine its eligibility for benefits. N.J.A.C. 10:78-4.2(a)(1). The CWA's "best estimate" of prospective income is generally "based on the household unit's income for the month preceding the date of application or redetermination." <u>Ibid.</u> However, "[a]djustments shall be made to the estimated income to reflect changes in income that either have occurred or which are reasonably anticipated to occur which would affect the household unit's income during a period of eligibility." <u>Ibid.</u>

An applicant must "[c]omplete, with the assistance of the [CWA], as needed, any forms required as part of the application process; and . . . [a]ssist the [CWA] in securing evidence that verifies his or her statements regarding

9

eligibility." N.J.A.C. 10:78-2.1(c). The CWA then reviews the application "for completeness, consistency, and reasonableness[.]" N.J.A.C. 10:78-2.1(b)(2).

NJFC regulations require that income include "the income of all members of the household unit." N.J.A.C. 10:78-4.3(a). The regulations go on to provide that "natural or adoptive children under the age of 21" are members of the household unit. N.J.A.C. 10:78-3.5(a)(1)(iii). Nevertheless, income eligibility determinations for the expanded Medicaid program under the ACA are required to be made pursuant to the federal income counting methodology known as the MAGI method. 42 C.F.R. § 435.603(a)(2). Under federal regulations, income of a dependent is not included in the household income when the dependent is not required to file a federal tax return. 42 C.F.R. § 435.603(d)(2)(i). In that regard, the applicable federal regulation states:

> The MAGI-based income of an individual who is included in the household of his or her natural, adopted or step-parent and is not expected to be required to file a tax return under section 6012(a)(1) of the Code for the taxable year in which eligibility for Medicaid is being determined, is not included in household income whether or not the individual files a tax return.
>
> [Ibid.]

Federal law requires that a tax return be filed for every individual having taxable yearly gross income that equals or exceeds the exempt amount. 26 U.S.C. § 6012(a)(1). In 2019, a single dependent was required to file a federal tax return if that individual's earnings were at least $12,200. Thus, we do not fault the CWA for using the income information it had at its disposal for J.M. in December 2018, calculating that he averaged earnings of $1,348.91 per month, and projecting he would need to file a federal tax return for 2019.[4] We also do not question the CWA's December 2018 determination that based on J.M.'s projected income, C.M.'s household income would exceed the household's eligibility threshold. Likewise, we do not take issue with DMAHS finding in May 2019 that the CWA was correct in projecting C.M.'s household income for 2019 rendered her ineligible for Medicaid benefits going forward.

However, because we granted C.M. emergent relief in June 2019, and remanded the matter for a hearing to reassess J.M.'s projected earnings for 2019, the agency was bound to consider J.M.'s updated income information as revealed during that August 2019 remand hearing. Such information included the ALJ's

---

[4] Although the calculation of J.M.'s monthly income varies throughout the record, for purposes of this appeal, we accept the agency's calculation that J.M.'s income averaged $1,348.91 per month, as this is the figure set forth in the challenged order of October 28, 2019.

findings that J.M. left ShopRite as of March 23, 2019, that his gross income for 2019 was $3,710.63, and that he had "not been employed for five months and there is no indication of a future employment opportunity for J.M." Importantly, the ALJ also concluded, "J.M.'s yearly gross income of $3,710.63 would not require him to file a tax return for the tax year of 2019." These findings were amply supported in the record.

On appeal, DMAHS does not take issue with any of the ALJ's findings. Instead, it simply concludes the information disclosed during the remand hearing we ordered was "not available to the [CWA] in December 2018 or during the February 25, 2019 hearing." But because the agency was aware after the remand hearing that J.M.'s projected income for 2019 fell far short of its initial estimation, and that he would not be required to file a tax return for that calendar year, we are satisfied it was not free to ignore this updated information as a basis to reverse the September 3 order reinstating the Medicaid benefits for C.M.'s household. See N.J.A.C. 10:78-4.2(a)(1) (compelling the agency to account for "changes in income that . . . have occurred" when calculating prospective income).

In sum, given the unusual circumstances in this case where we ordered the agency to conduct a remand hearing for the express purpose of having it reassess

J.M.'s projected income for 2019, as well as the likelihood he would need to file a federal tax return for 2019, we are persuaded DMAHS erred by failing to consider the supplemental information flowing from that hearing and by rejecting the ALJ's September 3, 2019 decision reinstating Medicaid benefits for C.M.'s household.

Reversed. Because we are unaware of the current financial circumstances of C.M.'s household, we remand for the CWA to consider the family's current eligibility status. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION